JOHN M. DAY v. MARY E. BRENTON, CLIDE E. BRENTON, CHARLES R. BRENTON, EVA A. BRENTON, and CHARLES R. BRENTON, and CLIDE E. BRENTON, Executor, Appellants.

Mortgage: RELEASE: *Innocent purchaser.* A purchaser in good faith of land conveyed by a deed of trust, who relies upon the recorded satisfactio ɩ by the trustee of the notes and deed of trust, purporting to be executed aftor the notes had matured and reciting the receipt of payment, is entitled to protection against the

*cestui que* trust or their assignees, although the notes had not in fact been paid and the trustee had therefore no authority to satisfy the deed.   Citing *Field v. Schieffelin*, 7 John. Ch. 150; *Ahern v. Freeman* (Minn.) 71 N. W. Rep. 538; *Merrill v. Luce* (S. D.) 61 N. W. Rep. 43; *Whipple v. Fowler* (Neb.) 60 N. W. Rep. 19; *Jones v. Clark*, 25 Grat. 656; *Carter v. Bank*, 36 Am. Rep. 341; *Weldon v. Tollmann*, 15 C. C. A. 138 (67 Fed Rep 986).

SAME: *Release by trustee.*  Where one of the joint owners of land assumes a mortgage subject to which it was purchased, and gives to one of his co-owners a trust deed to secure payment thereof, a decree, in a suit between the grantor in such trust deed and the trustee for partition and an accounting, that such grantor was bound to pay the mortgage and that on payment thereof "the clerk of the court" should satisfy the trust deed, does not deprive the trustee of power to satisfy it, the beneficiaries not being parties.

SAME.  Since the right of the trustee to satisfy the trust deed could not be abridged in such suit. its pendency did not affect the rights of one purchasing the land, relying on the satisfaction by the trustee.

SPLITTING CAUSE OF ACTION.  A mortgagee who forecloses his mortgage in an independent suit without asking to recover for taxes paid under a provision of the mortgage, cannot assign the claim for taxes and vest in his assignee the right to recover them, as that would allow the splitting of a cause of action.

## *Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

### THURSDAY, MAY 27, 1897.

SUIT in equity to foreclose a deed of trust, in the nature of a mortgage, made and executed by Pat and Mary Kenney, to Peter A. Johnson, covering certain land in Dallas county.  Defendants, who are the widow and heirs at law of W. H. Brenton, deceased, claim that decedent was a purchaser of the premises for value, and without notice, and that, at the time he purchased, the deed of trust was apparently satisfied and released of record by Peter A. Johnson, the trustee named therein. The lower court gave plaintiff a judgment and decree, and defendants appeal.—*Reversed.*

*White & Clarke* for appellants.

*Dudley & Coffin* for appellee.

DEEMER, J.— The deed of trust in suit conveyed ·che property to Peter A. Johnson, of Polk county, subject to these conditions: "That if the said Patrick Kenney, his heirs, executors, or administrators, shall p⸗ � or cause to be paid to the Iowa Loan & Trust Company, their executors, administrators, or assigns, the sum of one thousand dollars, on or before the first day of ·November, 1886, and to James Lamb three hundred and eighty-six dollars and sixty-one cents on or before the twenty-first day of March, 1884, and sixty-three dollars and thirty-four cents accrued interest, and taxes for 1882, with interest thereon according to the tenor and effect of the promissory notes given to said Iowa Loan and Trust Company, given with the mortgage by James Lamb, and assumed by Johnson and Kenney, and to be paid by P. Kenney, as shown on said notes, then these presents to be void; otherwise to remain in full force." Appellee claims to be the owner, by indorsement, of the note referred to in these conditions, as payable to James Lamb; and this suit is for judgment on that note, and to foreclose the deed of trust. After the execution of the deed of trust, and on or about the thirteenth day of November, 1886, Peter A. Johnson, the grantee named therein, made a satisfaction piece, acknowledging that the same was "redeemed, paid off, satisfied, and discharged in full." This satisfac· tion was duly filed for record with the recorder of Dallas county. Johnson had no authority, express or implied, from appellee, who then held the Lamb note, to enter this satisfaction of record. Thereafter W. H. Brenton purchased the property, relying upon the

recorded satisfaction of the mortgage, and believ-
ing that the Lamb note had been paid. Appellee
contends that the deceased was not justified in relying
upon the satisfaction for two reasons: (1) Because the
authority of the trustee was expressly limited to an
actual payment of the debts by Kenney to the person or
persons who held the notes described in the instrument;
and (2) because of a decree entered of record in a suit
wherein Peter A. Johnson, by his next friend, was
plaintiff, and Pat Kenney was defendant, wherein it was
determined that, as between them, Kenney was bound
to pay the notes secured by the deed of trust, and
further decree "that upon the release of said mortgage
to the Iowa Loan and Trust Company, and the payment
of said note to James Lamb, or the release of the surety
now on said note, that the clerk of this court enter satis-
faction of the mortgage made by Pat Kenney and Mary
Kenney to Peter A. Johnson, dated March 21, 1893."

To properly solve the questions presented, a further
statement of the facts is necessary. It appears from the
record that Lamb sold the land covered by the mort-
gage to G. I. Johnson, the father of Peter A. Johnson,
and the father-in-law of Pat Kenney. At the time of the
sale, the Iowa Loan and Trust Company held an unsat-
isfied mortgage upon the property. Johnson, the father,
agreed to pay Lamb one thousand, four hundred and
fifty dollars; one thousand dollars of which was covered
by an assumption and agreement to pay the Iowa Loan
and Trust Company mortgage, and the remainder to be
paid to Lamb. He caused the land to be conveyed (by
Lamb) to his son and son-in-law, and Kenney
agreed to pay the consideration to Lamb. Kenney
thereupon executed his note to Lamb for the amount
stated in the deed of trust, and G. I. Johnson
signed the same as surety. He also assumed and
agreed to pay the mortgage to the Iowa Loan and

Trust Company, and at or near the same time, and to indemnify G. I. Johnson and Peter A. Johnson, who owned one-half the property covered by the company mortgage, executed the deed of trust in suit. Afterwards some controversy arose between Peter A. Johnson and Kenney with reference to their rights in and to the premises, and Johnson brought suit against Kenney for partition, and for an accounting between them. In this suit it was decreed that Peter A. Johnson and Pat Kenney were each the owners of an undivided one-half interest in the land; that Kenney was individually bound to pay the mortgage to the trust company and the note in favor of Lamb; and that the mortgages, as between them, were liens upon the land set apart to Kenney, to be first paid therefrom; and further decreed that upon release of said mortgage to the trust company and payment of the note to Lamb, or the release of the surety on the note, the clerk enter a satisfaction of the mortgage made by Kenney and wife to Peter A. Johnson, being the mortgage or deed of trust in suit. Shortly after the execution of the note to Lamb, and before its maturity, he sold and indorsed it to plaintiff, and some time thereafter executed a formal assignment, referring to the mortgage in suit. Thereafter the loan and trust company foreclosed its mortgage, and sold the land under execution to Jennie A. Rivers, Rivers sold to Collins, Collins to Hoff, and Hoff to Brenton. Neither Collins, Hoff, nor Brenton had any notice of the mortgage in suit, except such as the record imparted, and some of these grantees expressly say that they relied upon the satisfaction appearing of record at the time they purchased. There is some doubt about Lamb's knowledge of the mortgage to Peter A. Johnson until after it was satisfied of record, but, as the case turns upon another proposition, we will not attempt a solution of the doubt.

As we view it, the case turns upon the authority or apparent authority of the trustee to satisfy the mortgage or deed of trust. In addition to the conditions to which we have referred, this instrument provided: "And it is further agreed that if default shall be made in the payment of said sum of money or any part thereof, principal or interest, or if the taxes assessed on the above-described real estate shall remain unpaid for the space of three months, and after the same are due and payable, then the whole indebtedness shall become due, and the said party of the second part, his heirs or assigns, may proceed by foreclosure or in any other lawful mode to make the amount of said note." It is no doubt true that Peter A. Johnson, the trustee, had no authority to release the deed of trust, except upon payment of the notes secured thereby; and it is conceded that, as between the parties, or persons having notice, a release executed by a trustee without authority of the *cestui que* trust, and without having received payment of the debt secured, does not discharge the lien. See Jones, Mortg. section 957; *Insurance Co. v. Eldredge*, 102 U. S. 545; *Williams v. Jackson*, 107 U. S. 478 (2 Sup. Ct. Rep. 814). The trustee did not have authority, in this case, to release the deed of trust except upon payment of the notes secured thereby, but the question here presented is somewhat broader than that of the express power of the trustee. It relates more nearly to his apparent authority, or rather to the effect of the release upon subsequent purchasers, who bought the land on the faith of the satisfaction piece appearing of record. Appellee concedes that the trustee had authority, upon payment of the notes secured by the deed of trust, to release the same. Now, if he had this power, will it not be presumed, in the absence of notice to the contrary, that, when he enters satisfaction of the instrument upon the records after the notes secured thereby have matured, the notes are paid, and

will not a good-faith purchaser of the land who buys relying upon this satisfaction be protected against the claims of assignees of the notes secured by the deed of trust? This is the vital question in the case, and its solution does not depend so much upon the authority of the trustee to receive payment as upon his power over the security and his right or apparent right to discharge the instrument. As it is conceded he had the power, without joining his *cestui que* trust, to release the mortgage upon payment of the debts secured thereby, it seems to us that, when he does do so after the debts mature, subsequent purchasers are justified in assuming that the debts have been paid, and in relying upon the record showing the discharge of the mortgage. The satisfaction made by Johnson, the trustee, was entered of record after the debts matured, and expressly stated that the mortgage or deed of trust was "redeemed, paid off, satisfied, and discharged in full." This is a statement made by one having not only apparent, but real, authority, that the debts have been paid, and that the mortgage is satisfied and released. Must a purchaser go further, and see that the debts were in fact paid?

We are aware that the uniform tenor of authorities is to the effect that a trustee has no powers, except those conferred by the instrument creating the trust, and that those given are strictly construed; and we do not overlook the fact that persons dealing with the subject of the trust must take notice of the extent and limitations of the powers conferred; and we do not desire to intrench upon these well-established and salutary rules. But the question here presented cannot be solved by reference to these rules alone. Here is a case where the trustee has the undoubted authority to discharge the deed upon payment of the debt secured thereby. His appointment is accepted by the *cestui que* trust, and

they say to the world that, upon compliance with certain conditions, he has authority to release the instrument. He does release it, and subsequent purchasers buy, relying upon this satisfaction . Who is to suffer under such circumstances,—the one who puts it in the power of the trustee to make the discharge, or the one who buys on the faith of the deed of trust being satisfied? Application of certain well-known equitable principles will settle this question. Some of these rules have been thus stated: "Where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it." Again: "Where somebody must be loser by reason of a deceit practiced, he who employs and puts trust and confidence in the deceiver should be the loser, rather than the stranger." Again, it has been said: "Where loss is caused by the fraud of a third person, such loss should fall on the one whose act enabled such fraud to be committed." In applying these maxims, we have said that where a mortgagee in a mortgage given to secure a certain promissory note negotiates the note to a third person, and then enters a satisfaction of record, such entry will protect a subsequent *bona fide* purchaser of the land from the mortgagor if he had no notice at the time of such purchase that the note was unpaid, or the entry of satisfaction unauthorized. *Cornog v. Fuller*, 30 Iowa, 212. In another case involving the same question, *Bank v. Anderson*, 14 Iowa, 544, we said that parties should not be permitted to leave their rights and interests in liens and real estate in such a condition as to injure those who are deceived by appearances, without a record notice to guide them. The appellee in this case has no greater or other rights than Lamb, from whom he purchased the note, for he did nothing to indicate that he had any interest in the security. Appellee relies upon the cases of *Weldon v. Tollman*, 15 C. C. A. 138 (67 Fed. Rep. 986), and *Livermore v. Maxwell*, 87 Iowa, 705. These cases are much

alike in their facts, and differ from this in many important particulars. In the *Weldon Case* the release was by quitclaim deed; and did not purport to be a satisfaction of the deed of trust in execution of the powers conferred upon the trustee. And in both cases it appeared that the release was given before the maturity of the notes secured by the trust deed, and in neither were the notes surrendered to the makers. More- over, it is expressly held in the *Livermore Case* that a subsequent purchaser who in good faith relied upon a satisfaction entered of record by the *cestui que* trust, as well as the trustee, would be protected, although at the time the satisfaction was entered the *cestui que* trust had disposed of the notes secured by the deed. The uniform course of decisions in this state has been to discourage secret liens, and to protect those who invest their money in reliance upon the integrity of the county records. See *Jenks v. Shaw*, 99 Iowa, 604, and cases cited.

Some conflict will be found in the authorities bear- ing upon the questions here considered, but we think the case turns on the application of a few well defined equitable principles, and that the result reached is in accord with these maxims. See, as sustaining our con- clusions, *Field v. Schieffelin*, 7 Johns. Ch. 150; *Ahern v. Freeman* (Minn.) 48 N. W. Rep. 677; *Kuen v. Upmier*, 98 Iowa, 393; *Merrill v. Luce* (S. D.) 61 N. W. Rep. 43; *Whipple v. Fowler* (Neb.) 60 N. W. Rep. 19; *Jones' Executors v. Clark*, 25 Grat. 656; *Carter v. Bank*, 36 Am. Rep. 341.

The decree upon which appellee relies as notice to appellants' ancestor, that Johnson had no authority to release the mortgage, being the one entered in the par- tition and accounting case of Johnson against Kenney, did not take away from Peter A. John- son his trusteeship; nor did it in any manner abridge or destroy his right to release the trust deed.

If it purported to do so, it would be ineffectual, for the reason that neither of the *cestuis que* trust was made a party to the proceeding, and the district court could not discharge their trustee, and place the clerk of the courts in his stead, without authority from the beneficiaries, or an adjudication in a case to which they were parties. If we treat the suit as *lis pendens,* it does not aid the appellee, for the reasons stated.

Some question is made regarding certain taxes allowed to appellee, and included in the judgment. As these taxes were all recovered under stipulations contained in the deed of trust in suit and the provisions of the loan and trust company mortgage, we need only consider those paid by the trust company, claim for which was assigned to appellee, as the deed of trust to Johnson was satisfied in so far as these defendants are concerned. Appellee is not entitled to recover for taxes paid by the loan and trust company for two reasons: (1) They foreclosed their mortgage in an independent suit, and did not ask to recover for taxes paid. Having failed to do so, they cannot assign a claim therefor, and vest in their assignee a right to recover, for this would allow them to split their cause of action and foreclose by piecemeal. (2) Appellee did not ask to recover these taxes under the loan and trust company mortgage, but under the one to Johnson, as trustee; and this, as we have seen, was satisfied of record.

Appellants filed a cross-petition, in which they asked that the deed of trust be decreed to be no lien upon their real estate, and that the same be declared fully canceled and satisfied of record. This relief should have been granted. The decree of the district court is reversed, and the cause remanded for further proceedings in harmony with this opinion.—REVERSED.